Good morning, may it please the court, my name is Carmen Parcelli, I'm with the law firm of Guerrere, Bartos & Roma and I'm representing the appellants, the union, the American Railway and Supervisors Association, which is commonly known as ARASA, and also the appellant employee, Roland Beltran. And we ask the court to reverse the summary judgment that was entered by the district court below. This case involves a challenge to an arbitration award that was issued under the exclusive and mandatory mechanism that Congress has set forth in the Railway Labor Act in order to decide contractual grievances. And Congress's choice of this exclusive mechanism really serves two explicitly stated public policy goals. The first is the orderly, i.e. peaceful resolution of these types of disputes. Just as a little background, prior to Congress adding the mandatory arbitration mechanism to the statute, sometimes these workplace grievances would fester and accumulate and would actually lead to labor strikes and disruption. So Congress decided to amend the statute to make arbitration the mandatory and exclusive means to resolve these disputes. And the second explicitly, again, stated public policy goal in the act is the expeditious resolution of these matters. Again, that they not fester, that they not grow, and that these matters get resolved as quickly as possible. And both of these, both order and expedition, were viewed as essential for sound and stable labor management relations under the statute. So in order to effectuate these stated policy goals, the Railway Labor Act makes arbitration awards final and binding. And that's specifically set forth in the statute. And so, again, to this end of providing a final and binding process, Congress provided for judicial review of RLA awards under a standard that's been called, quote, among the narrowest known to the law. So there are three grounds set forth in the statute. The first is a failure to comply with the requirements of the Railway Labor Act itself. The second would be fraud or corruption on the part of an arbitration board. And the third is acts in excess of the arbitration board's jurisdiction. The district court here inappropriately expanded this scope of review under the statute. And for this reason, its decision should be set aside by this court. Now, the facts of this case are fairly straightforward, so I don't intend to discuss them at length, but I would like to offer a brief summary to emphasize a few essential points. So in 2011, Mr. Beltran tested positive in a workplace drug test for cocaine. And as a result of this, he entered into what's known as a companion or waiver agreement with Union Pacific, his employer. And what this does is it enables the employee to avoid discipline. They waive what they would otherwise have as their resort under the collective bargaining agreement to challenge the discipline. And instead, they agree to go into the employer assistance program and follow whatever requirements that program asks of them in order to return to service. So this is what Mr. Beltran did. And the EAP process ordered for him to undergo a follow-up testing for a five-year period. So from 2011 to November of 2014, he had 57 tests in all under this follow-up regime, all of which were negative, including a test on November the 13th of 2014. Then on November the 20th of 2014, he was administered a test, which the company ultimately found to be positive for amphetamine and methamphetamine based on the report of its medical review officer known as the MRO. So then following in January of 2015, Union Pacific conducted an investigation and a hearing as it's required to do under the collective bargaining agreement process. And shortly thereafter, based on the investigation hearing, Union Pacific terminated Mr. Beltran's employment. Then the union progressed the discipline ultimately to arbitration before a public law board. In December, or I should say on December 22nd of 2016, so this is almost two years ago now, the public law board issued an award which conditionally reinstated Mr. Beltran. Union Pacific declined to allow Mr. Beltran to enter the EAP process to return to service as the award had directed and instead in March of 2017 filed an action in federal court to set the date for the termination of Mr. Beltran. And then in November of 2018, the district court entered summary judgment on behalf of Union Pacific and rejected summary judgment for the union and Mr. Beltran. And this appeal followed. So here we are, we're four years out from Mr. Beltran's termination. And you know for a statutory mechanism that's designed to reach final and binding and an expeditious end to these matters in the workplace, that is quite a long time. Although unfortunately I've seen even longer. But that is not in our view fulfilling the aims of the statute to expeditiously resolve these matters. Now turning to our legal argument, there's essentially three main topics. So I'd like to outline those and then go through each in turn. So our first point in our legal argument is how the district court should have applied the Railway Labor Act standard for review. And if applied appropriately, the arbitration award should have been upheld. Second, I want to address the Railway Labor Act. And lastly, I'd like to address again Union Pacific's claim that the arbitrator's award contravenes public policy. So turning first and perhaps most briefly again to the RLA standard of review, under this standard the district court should have upheld the award. The RLA again gives only three cases. Fraud or corruption, which is also not at issue in this case. And then lastly, acts in excess of jurisdiction, which is the second point that I will get into more detail. But in this case the arbitrator did precisely what arbitrators are supposed to do under the Railway Labor Act. She interpreted the contracts. Specifically she focused on the collective bargaining agreement, what's known as Rule G. And also the waiver agreement letter that Mr. Beltran entered in 2011. So she applied the facts as she found them through the investigation that was conducted on the property and then presented in the submissions to the arbitration panel. And based upon those facts as she found them, she selected a remedy that was deemed appropriate under the facts and applying the contract terms. So this is what arbitrators do and this is what the parties had asked her to do, Union Pacific included. These are precisely the questions and matters that she was asked to entertain. So in doing so she acted squarely within her jurisdiction, which is of course to Now turning to Union Pacific's claim on the jurisdictional issue, and it is that the Department of Transportation has limited the jurisdiction of arbitrators under the Railway Labor Act through its regulations on drug testing protocols. So as a threshold matter, this argument has been waived. It was never raised during either the on-the-property grievance handling that was conducted by the company, and it certainly was never raised during the arbitration portion of the statutory process. And it's not even just that it wasn't raised. To the contrary, Union Pacific specifically argued to the arbitrator the matters that it now says she should not have had the authority to entertain under the Department of Transportation's drug testing regulations. They specifically argued the bona fides of the drug test that was administered and ultimately verified by the medical review officer, and they put evidence specifically aimed at this into the record and argued this precise issue to the arbitrator. So it's not a waiver just through mere silence here. They actually put these issues to the arbitrator that they now have said to the district court and now again before this court were beyond the authority of this arbitrator to entertain. Now as far as the authority of the arbitrator being limited by the DOT regulations, of course at the heart of this argument is the regulation that's found at 49 CFR section 40.149. Now it's important to note, I think, at the outset that the collective bargaining agreement in this case does not incorporate the DOT drug testing regulations, okay? So this is an important distinction between this case and an earlier case before this court, the Continental versus Airline Pilots Association case, which is cited at length in both our brief and appellee's. So in that case, there was an argument made about jurisdiction based on DOT regulations, but there the collective bargaining agreement specifically incorporated those regulations, whereas ours does not. So here the jurisdictional argument rests on the premise that the Department of Transportation in its drug testing rulemaking has decided that it can and should limit the jurisdiction of arbitrators operating under a separate statutory regime, here in this case. Now that would actually be a pretty extraordinary thing for the Department of Transportation to have done through its rulemaking, but DOT did not do that. Instead the agency has made it clear that it does not decide the personnel consequences that might follow from a failed drug test. Instead, the DOT's testing requirements and protocols speak to what an employee must do to resume work in a safety sensitive position. So whether or not they are disciplined by the employer in some fashion or terminated by the employer, that's not something that DOT has spoken to. And the language of the reg limits itself. It says that the MRO has sole authority under this not intending to decide matters that relate to personnel decisions. And the authoritative guidance that we cite, and it's pages 34 and 35 of our brief, is very key here. And it says that you can have a situation where an arbitrator makes a personnel decision that seems at variance with the MRO's validation of a drug test, but that the employer may nonetheless be required to abide by that arbitrator's decision. So the two need not be read in conflict. It does not need to be read that the DOT... Do you agree, what if the arbitrator had ordered the railroad to return him to a sensitive position? Then the railroad needs to follow the DOT's regulations. That is a requirement for him to return to a sensitive position. That wasn't what the arbitrator ordered here. Yes. That I would agree with. Obviously an employer then might be faced, and DOT says this in its guidance, with having to basically make this grievant whole, either put them in a position that's not safety sensitive or just pay them. And we understand, and DOT said this may be a the equal dignity of the two schemes. Now to talk about the public policy aspect, again, this really rests upon the same, in our view, misreading of the DOT regulations. The Supreme Court has been clear, there must be an explicit and well-defined public policy. We don't see that. I see that my time has run. All right. You've reserved your rebuttal time. Yes. Thank you. Thank you for the point. All right. Mr. Godner. May it please the Court, Cliff Godner for Ampley Union Pacific. This case presents a highly unusual situation where an arbitrator did something that federal drug testing regulations directly say arbitrators are not allowed to do. Then why didn't your client tell the arbitrator that? Your Honor, we did not cite the regulation to the arbitrator. The people who arbitrated this case for the railroad were unaware of the regulation. So here we are. And let me talk about waiver then. Before I get in, let me talk about the waiver argument because it was raised and it's a legitimate argument. The railroad did argue in its submission to the arbitrator that begins at page 799 of the record that the MRO had studied the medications that Mr. Beltran was taking, made a medical judgment that the arbitrator shouldn't disturb, but did not cite the regulation, did not say you cannot as an arbitrator do this. And arguments that arbitrators exceed their jurisdiction can be waived. But that is not true about arguments that the award violates public policy. And this Court held that in the Gulf Coast Industries case that we've cited in our brief and that the District Court relied on. The Union's brief, in fact, if you read it, it doesn't argue to the contrary. Their waiver section is in the jurisdictional part, not in the public policy part. The public policy arguments aren't waived and there's a good reason for that. Arbitrators are creatures of the contract. Did the arbitrator order the employee to be returned to a sensitive position? Essentially, yes, because if you look at the arbitrator's award, what it says is he is reinstated with his seniority intact. That means he has the right to go back wherever his seniority allows him to, and his seniority before allowed him to hold this job that was safety sensitive. It would allow it again. Now, counsel's right that he has to go through the reinstatement protocol regardless of what the arbitrator may rule. I think that this Court has clearly held and we're right about that. But she did, the arbitrator did specifically say he comes back with his seniority intact. That would let him hold this job. So are you hanging your hat on the public policy piece and sort of bypassing waiver on the- So I'm not going to concede here today that we waive the argument. I think if you read our brief to the arbitrator written by a non-attorney, what you're going to see is that the, is the argument that the MRO studied this and the arbitrator shouldn't set it aside. But we didn't cite the issue, avoids the waiver problem. And you don't even have to look at the waiver issue if you go on the public policy side. Yes. The regulation here that we're talking about is 49 CFR section 149C. And what it says is an MRO has the sole authority to make a medical judgment about whether an employee has presented a legitimate medical explanation for a positive test. That was Mr. Beltran's claim, that he was, that there was a legitimate medical explanation here. And the regulation says, and the language is really important, an arbitrator is not permitted to overturn the medical judgment of the MRO that the employee failed to present a legitimate medical explanation for a positive test result. That's exactly what the arbitrator did here. Exactly what the regulation says that the arbitrator cannot do. And on the exact issue that the DOT provided for in this regulation. And remember, all of this happens after Mr. Beltran signed his will stating that he's taking advantage of a one-time return to service opportunity subject to the Union Pacific drug and alcohol policy, including Article 21 of that policy. And Article 21 told him that another violation of that policy within 10 years would mean permanent dismissal. It was unambiguous in that, in the drug and alcohol policy. The second drug test, less than four years later. And he had signed a clear last chance amendment. So the district court relied on this court's decision in Continental Airlines vs. Airline Pilots Association, which has addressed the public policy issue. And that's what I really want to spend my time on today. I have two topics I'd like to cover with the court. First, why the district court's ruling that the award violates public policy is correct. And second, why, given that the arbitrator cannot overturn the MRO's medical judgment, the district court properly vacated the award based on the unambiguous language of the last chance agreement and the drug and alcohol policy that it incorporates. So begin with the public policy issue. The Supreme Court has said courts cannot enforce arbitration awards that violate public policy. And in the ALPA case, this court held that that review applies to Railway Labor Act arbitration awards and it explained how the analysis works for awards that violate drug testing regulations. In that case, the arbitrator ordered an employee who refused to take an alcohol test reinstated and placed in the airline's employee assistance program, this EAP, for two years. But a federal drug testing regulation gave sole authority to another medical expert, a substance abuse professional, to decide whether and for how long an employee should be in the EAP. Because the arbitrator did something that federal drug testing regulations said the arbitrator couldn't do. But there's an online discussion of all this. And it seems that if it says, to me at least, it seems to say that if the arbitrator orders them back to a sensitive position, the arbitrator can't do that. But the arbitrator can say, well, in spite of that, you have to follow the personnel policy outcome. Can you address what? Yes, absolutely. And let me just say, let me answer the question. I'm trying to put in order the arguments that I'm going to make. But let me just go straight to that language. So let's look at, this is the second question and answer. There's two questions and answers. We included both of them in our addendum to our brief. So this is the second one. And what the second one asks is, what's an employer to do if an arbitrator's decision claims to overturn the results of a DOT drug testing on grounds contrary to the regulation? And the sentence they cite says this, the employer may still be bound to implement, as Your Honor points out, the personnel policy outcome. They say that overrules the regulation and it overrules a couple of other statements from the DOT I'll get to. But they say that overrules them. But it's not what that sentence says when you read it carefully. It says the employer may still be bound. So let's start with that, may. If the defendants were right and that sentence overruled the basic statement in the regulation that I read earlier, arbitrators cannot overturn these MRO determinations of whether there's a legitimate medical explanation. If they're right, it would say the employer is still bound. They used may. So they used may for a reason. It's a conditional statement. You may or you may not. Depends. So when would an employer be required to follow the outcome of the award? Again, go back to the language. May be bound to implement the personnel policy outcome. They didn't say the medical judgment of the arbitrator. The thing that the regulation commits to the sole discretion of the MRO. They said the personnel policy outcome. So think about this. Absent the last chance agreement here, that unambiguously said that a second violation of the policy would mean Mr. Beltran would be permanently dismissed, absent that, if an arbitrator says I think this was a false positive, but in any event, the maximum penalty here would be a 60-day suspension, the railroad is stuck with that and it converts a termination to a 60-day suspension. Can't do anything about that because that's the personnel policy outcome. And that's the arbitrator's area of expertise, after all. The MRO licensed independent doctor, sometimes they're called Union Pacific's MRO, not a Union Pacific employee, has to be independent, trained in the science of drug testing, understands legitimate medical explanations. That's the MRO's area of expertise. Personnel policies are arbitrators' areas of expertise. And so I think it was a false positive, but in any event, 60-day suspension is the maximum penalty here. Railroad has to comply. Another example. And this actually has happened in one of the cases that we looked at. I believe the Atchison, Topeka and Santa Fe case that's cited in the brief. Arbitrator finds that a procedural aspect of the grievance handling process was violated. Company didn't conduct a proper hearing. Maybe they missed the time limit in the grievance handling process. That's mandatory. Didn't deny the grievance in a timely manner. The fact that the arbitrator also said in the opinion, well, I think this was a false positive anyway, wouldn't stand in the way of the employee being reinstated. That's what they're talking about. The arbitrator's personnel policy decisions, not the medical judgments. And as the district court held, it's wrong to read that sentence in this interpretation to overrule the regulation. But as I said before, I kind of hinted at this, it's not just the regulation. The regulation is really clear. And as I read to you right up front, I wanted to get this in because it directly addresses an arbitrator cannot do what this arbitrator did is what it says. That's not the only place they said that. The Department of Transportation, when they issued the regulation, stated in the Federal Register why they were doing this. They said they believe strongly that the medical judgments of the MRO on these questions should not be overturned by arbitrators. And I want to point that out. They specifically talked about arbitrators. The argument that, oh, why would they be messing around with the Railway Labor Act? Well, they're talking about arbitrators right here. So you know they meant to address arbitrators. And they said, consequently, we've clarified the regulation to emphasize that MROs have sole authority to make medical judgments about drug test results, and that arbitrators, again, pointing to them specifically, and other participants in the system do not have authority to overturn those judgments. They go on in the next paragraph, and what they say is this is medical judgments we're talking about. Our rule is about medical judgments. Non-medical judgments are different. They give a different example. They say a drug test can be overturned by an arbitrator if the arbitrator finds that there was a break in the chain of custody of the sample. But listen to these words they used that address exactly what we're talking about. But an arbitrator could not decide in the face of an MRO's judgment that there was not a legitimate medical explanation, that the employee had presented a legitimate medical explanation. So they come out again and say the arbitrator cannot do what this arbitrator said. They say the rule is intended to prevent such a substitution of judgment about a matter committed to the expertise of the MRO. So now that's twice they've said explicitly, no limitations, not... address the personnel policy outcome. Why can't the arbitrator say okay, but I order something else short of termination? Okay, so let's talk about that, and let's apply it to the... let me answer the question this way. In the normal case, the answer to your question would be the arbitrator can. Okay, in a normal situation where, and we had this, a good example is the that both parties have cited to in their brief. There was no sanction laid out in the agreement about what happened if the employee violated or failed a second drug test, and so the Supreme Court said it's up to the arbitrator. And if those were the facts here, I wouldn't be standing up here in front of you today, but it's not. Here, Beltran and the union signed the last chance agreement. Here's the distinction in my mind. Okay. You didn't ever argue this reg to the arbitrator at all. And it's one thing to say public policy is clear that an arbitrator cannot return someone who's failed a drug test to a sensitive position. I think that's a public policy issue. Clearly cannot do that. You never argued that the agreement, the only remedy the arbitrator could ever order would be termination. No, I think we did argue that. I think in our submission to the arbitrator, we did say that. On public policy grounds, the arbitrator cannot. No. Never. No, no. And it's not our, wait, it is not our argument that Mr. Beltran could never be returned to service on public policy grounds. That, I understand what you're saying about before he goes back. But the regulations don't say he has to be terminated. And so we're not, that's not our argument. So our argument is what public policy prohibits, what I read you down twice, the DOT says an arbitrator cannot do, is overturn the medical judgment of the MRO that there isn't a legitimate medical explanation for the positive test. Okay. So if that part of because it's against public policy, it violates a specific regulation, then the question is, what happens to the part of the arbitration award that said Mr. Beltran has to be reinstated? And on that point, you look at what the last chance agreement says. And you ask yourself, under this Court's cases, in Cooper Natural Resources, in Continental Airlines versus Teamsters, what happens when an arbitrator ignores unambiguous language from a last chance agreement? And that's what we have here. This last chance agreement says this was a one-time return to service opportunity, as provided in the UPRR drug and alcohol policy. The idea that this agreement didn't incorporate the drug and alcohol policy, it says it right there that it does, and that any future return to service will be under those terms and conditions, it says. So what does the drug and alcohol policy say? The drug and alcohol policy, Article 21, says an employee granted this one-time return to service opportunity, who violates the policy again within ten years. We've held that in excess of jurisdiction. That part of the award is in and we didn't waive that part of the argument. That's my point. We did not cite the—so let me be clear, because I see the confusion, Your Honor. Well, I mean, I understand. I just—it's already harsh through this. Well, this is why oral argument is great, because I get to clear up—if I'm not being clear, I get to clear it up. So what we didn't argue to the arbitrator is that she could not overturn the MRO's no legitimate medical explanation finding. What we did argue to the arbitrator is that the last chance agreement required Beltran's dismissal. We said— Did you say you have no jurisdiction to do that? No, but I don't think we have to do that. I've never seen a case that says that we have to tell the arbitrator that she's without jurisdiction. What we have to do is lay out the argument. And let me say one other thing. Very important, I think, on this point, Your Honor. The union never argued to the district court, didn't argue in their opening brief to this court, that the last chance agreement didn't require Mr. Beltran's dismissal if he, in fact, had failed a second drug test. In fact, in their brief to this court, at the top of page 32, they're talking about what the last chance agreement means, and they say, if the company alleged that Mr. Beltran had failed his second drug test, he would be terminated. Go on and say, but he has the right to go through the arbitration process. But they've conceded it, and they never argued to the contrary in the district court. And the words of the last chance agreement are so clear. And we did not waive that point. So I'm glad you let me clarify that, Your Honor, because I think that's important. There was no waiver of that issue, and in any event, they didn't argue that to the district court. Tell me in one declarative sentence what you acknowledge you did waive. We did not cite the regulation to the arbitrator and tell her that she had, she could not overturn the MRO's no legitimate medical explanation determination. We argued that she shouldn't do that. We made all of the arguments about what the testing was, what the MRO had done, what his qualifications were to make that, and the scientific basis upon which he made that decision dealing with what polymer, or I'm sorry, isomer of methamphetamine was found in his sample. Okay, so on that part, but what we didn't do is cite the regulation. Have I, I hope I've clarified. You and I are on the same wavelength. I get your argument, but I don't think I explained my concerns adequately to you. Okay, here's my thinking. You waived arguably. Let's assume that we find that you waived the regulation as a jurisdictional impediment to the arbitrator's authority under the reg. Okay, it seems to me that if you waive that, then you can't argue that as a contractual matter, jurisdictional matter, the arbitrator had no authority to do anything other than uphold determination. My point is on a public policy ground, the only thing that public policy reaches, which you can't waive, is that we don't want people who failed drug tests to be in sensitive positions. We don't care about the personnel policy outcome. It seems to me you have waived your argument about jurisdiction on the personal policy outcome, but you did not waive and cannot waive the public policy argument that this guy does never get in a sensitive, he cannot be in Okay, I appreciate that, Your Honor. If that clarifies, well, I think it does. What I would say is if you look at the ALPA case from this court, what you're going to see is the public policy is stated a little differently than what you said, Judge Owen. The public policy that the DOT has emphasized there is the public policy in favor of having medical experts make medical judgments in federally required drug testing, and not to have those judgments overturned by people who aren't medical experts that have gone through the training that's required to be an MRO or a substance abuse professional as it was in the case of the ALPA case. Okay, the public policy violation here by the arbitrator is that she overturned the no legitimate medical explanation. She can't do that for the purposes of putting him back in, the DOT doesn't care about whether you have to pay him money for the rest of his life as long as you don't put him back in a sensitive position. What I would disagree, she can't do that for any purpose, not for the purpose of whether he gets reinstated or not. She cannot overturn that determination. It's set. That was a positive test, and if that's a positive test, then there's a whole second issue here. We didn't waive the second issue by not raising the first issue. There's two jurisdictional issues. I hear you. Okay. You're saying the MRO determination is a discreet arena which is cabined off from the arbitrator's determination, and that's such a prominent aspect of the public policy issue that it is not only non-waivable, but whether or not you told the arbitrator or not, it cuts so deeply into public policy that as a matter of law, essentially, this must be vitiated. Right. That's exactly right. Then that's what the DOT said twice, and if you actually look at the first of the two questions and answers, they said it a third time. Okay, but that's your, I'm not saying that's... I know, I know you're not saying that public policy is bigger than a matter of can't be put back in the safety sense. Absolutely. You're just saying it's almost a per se out of bounds area for the arbitrator, and once they get out of their lane, as we say, it's prohibited no matter whatever else you waived. That's the deal. All right. I think we got you. I think we at least understand. Thank you. You know, that's why we're here. All right. Okay. Ms. Barcelli, you were holding on to your seat belt trying to get back up here. I'd like to see you. My apologies. All right. There are a few points I do want to address here. So, in terms of the DOT regulations and the reference to arbitrators and arbitration, if you look on arbitrations that can go on here, and the DOT regulations provide for a hearing process, but if you're covered by a collective bargaining agreement, that can dovetail with whatever the collective bargaining agreement process is. Okay? So, you would get resort in some fashion to an arbitration process even if you didn't have one, a collective bargaining agreement, but if you do, those two processes to some extent can run together, shall we say. I don't think, though, that there is an intention that there is a global pronouncement that for all questions, even not the essential question for DOT, which is the circumstances under which someone can resume a safety-sensitive position, right, that they are saying no one, no arbitrator, no judge, for that matter, can ever second-guess or re-evaluate the MRO's verification. So, I think that is just too broad a reading of what DOT was intending to do in its regulations. All right. What if we conclude that the DOT does not allow the arbitrator to determine that there was not a legitimate medical explanation for a laboratory result? Well, and is bound by the, is there any other basis on this record that the arbitrator could have thrown out the test? Yeah. What's supported in the record? A couple of things. First of all, if you read her decision, it's a little vague, and courts have said that's okay. You know, a Brandeis-brief kind of treatment of these things. But that she, in her decision, seemed quite convinced that the MRO had not really entertained and looked at the prescription drug that Mr. Beltran had indicated that he had been taking periodically. Well, he said he hadn't talked about the, we're assuming that she's going into the medical part of it and the science part of it, and we say she can't do that. What else is there in the record that was supported? What I'm saying is she seems to have, it's a little unclear the line between a kind of procedural problem in what the MRO knew, what, that her, her decision could be read to say that she didn't think the MRO considered certain things. What? What possible things in the record? The prescription. If you read her decision, which is in her attendance. But he said he did. The MRO said he did. But she's entitled to find the facts. Well, what if we disagree with you and say, medical judgment controls, she can't go behind that. What else is there that would support what the arbitrator did? We certainly do disagree with Union Pacific's position that was articulated here this morning, and we made that clear in our reply brief. I want to know, if we say she cannot go beyond the medical part of it, what is there that would support what she did beyond other than that? Well, we certainly disagree that the waiver last chance agreement, like, required her to sustain a termination, that there was nothing that she could do short of termination. And this is important that you look at the documents that Union Pacific is actually citing, and so you can the waiver letter at 723 in the record, and that you can find the pertinent provision of their policy at 775 in the record. So what you have to do, according to Union Pacific, apparently, is read the waiver agreement letter in conjunction with their policy document. But the waiver agreement letter is the contract, right, that the arbitrator was looking at and interpreting. And it's not clear from the language and the face of that whether or not someone had to be permanently dismissed if you found a second failed valid drug test, okay? There is a reference to Article 21 in the policy, but it's in the context of the return to service process. It's not in the employer can have a policy, but that's not something that the union and the employee have agreed to, necessarily. Also, if you look at the final paragraph in the waiver agreement letter, it specifically says, I understand that if I deny the validity of a non-negative drug test that's conducted by Union Pacific, that there is the arbitration provision on this. So you can challenge the termination if the employer terminates under this agreement. So it's just, I see that my time is up. You got a red light. I'm going to give you one closing sentence, void of semicolons and the rest, okay? Yeah. So again, if they are hanging their hat so heavily on the public policy, we need to have a well-defined and explicit public policy. We don't think the DOT regulation provides that, that there is sort of non-reviewable medical judgment here that would obtain in any and all circumstances. All right. Thank you. Appreciate it. Thank you. All right. Thank you, counsel, both sides for the briefing and